IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    *Plaintiff*,

vs.

MICHAEL FREDERIKSEN,

    *Defendant*.

Case No. 18-CR-10016-EFM

**MEMORANDUM AND ORDER**

On May 1, 2018, a jury found Defendant Michael Frederiksen guilty of one count of making a materially false, fictitious, or fraudulent statement or representation, in violation of 18 U.S.C. § 1001(a)(2). The Court sentenced Petitioner to one year of unsupervised probation. Petitioner now brings this Motion to Vacate under 28 U.S.C. § 2255 (Doc. 76). In this motion, Petitioner brings four claims of ineffective assistance of counsel. The Court held an evidentiary hearing on September 24, 2019. For the reasons described in detail below, the Court grants Petitioner's motion.

**I.    Factual and Procedural Background**

The facts surrounding Petitioner's judgment of conviction are as follows. On January 18, 2018, the government charged Petitioner with two counts of violating 18 U.S.C. § 1001(a)(2). Count One alleged that, on or about February 23, 2017, Petitioner "willfully and knowingly [made] and [caused] to be made a materially false, fictitious, and fraudulent statement and representation"

to federal agents by saying that he did not attend and did not play at a private poker game organized by an illegal gambling business on February 12, 2014. Count Two charged Petitioner with willfully and knowingly making a false statement and representation to federal agents by saying that he had approximately ten contacts with Johnny Steven, who was responsible for organizing the illegal gambling business's poker games.

Petitioner made his first appearance on February 9, 2018, and he entered his not guilty plea. The Court entered a Pretrial and Criminal Case Management Order on February 13. In this order, the Court required the government to file a notice of its intent to use any 404(b) evidence under the Federal Rules of Evidence at least 21 days prior to trial.

Petitioner proceeded to trial, and trial began on April 30, 2018. The government called five witnesses, and the defense called three witnesses, including Petitioner. Testimony demonstrated that the Wichita Police Department ("WPD") and the FBI began a gambling investigation involving illegal poker games being played at different locations in Wichita in 2014. There was testimony from several individuals about Petitioner playing poker at multiple locations at different times. The primary targets of the investigation were Daven Flax and Johnny Steven.

The two primary locations that were investigated in 2014 were a business, O'Brien's, and a loft location on Douglas. The relevant location and date at issue (for the charges against Petitioner) was on Douglas and occurred on February 12, 2014. On this date, an undercover officer attended the poker game. Petitioner was shown on video to have attended the game.

At trial, an FBI agent, a WPD detective, and Petitioner testified about an interview between the agent, detective, and Petitioner that occurred on February 23, 2017, at Petitioner's house. WPD Detective Shae testified that after Petitioner was admonished that lying to a federal agent was a criminal offense that Petitioner stated that he had gone to the Douglas location. Shae testified

that Petitioner denied playing in the game because there was an undercover officer there. Upon cross examination, Shae stated he did not recall mentioning a specific date to Petitioner.

FBI Agent Ross testified that during the February 23 interview, Petitioner told them that Steven invited Petitioner to a poker game at O'Brien's. Ross stated that Petitioner stated that he went to the game but left after about five minutes because the stakes were too high, and Petitioner stated that Steven was not there. Ross asked if Petitioner had played at other locations and when Petitioner stated that he had not, Ross told Petitioner that if he was lying, he would be in trouble. Ross also told Petitioner that they may have video of him at a Douglas location. According to Ross, Petitioner then stated that he had gone to another location on Douglas but did not play poker. There was no testimony relating to a specific date because Ross stated that he never asked Petitioner about a specific date.

The government asked Ross several questions about what Petitioner had not said during the interview. In asking about the Douglas location, the government asked if Petitioner had told the agents that Petitioner had gone to the Douglas location four to eight times. Ross answered that he did not tell them that.

Petitioner testified at trial. He stated that he played poker approximately three or four times at the Douglas location. Petitioner also testified about the February 23 interview. He stated that he was not asked specific dates during the interview. Petitioner stated that he played in the February 12 game, but neither agent specifically asked him about that game because they did not reference dates.

Between Petitioner's direct examination and cross-examination, the Court took up Petitioner's Rule 29 motion.[1]  Petitioner's counsel made a very brief argument that the evidence did not support the charges.  The Court granted the motion as to Count Two finding that there was insufficient evidence to support that charge.[2]  The Court also noted that there had been a lot of evidence irrelevant to the charges, but the Court had tolerated it because Petitioner's counsel had not made any objections.  In addition, the Court warned the parties that based on the extraordinary length of testimony about matters unrelated to the charges, the Court would no longer permit evidence unrelated to the remaining charge.

After the close of all the evidence, Petitioner did not renew a Rule 29 motion.  The government gave its initial closing.  Petitioner's counsel responded with a closing argument that was less than three minutes long.

In the government's rebuttal closing, it characterized Petitioner's actions as minimization and misdirecting.  The government stated that what had occurred in the case was Petitioner minimizing his involvement in hopes that he would not be asked follow-up questions.  The government also argued that Petitioner only answered what was specifically asked hoping that the agents did not catch on and engaged in classic minimization.  Petitioner's trial counsel did not object to any of the government's statements in rebuttal.

The jury returned a verdict of guilty on Count One on May 1, 2018.  After excusing the jurors, the Court set a sentencing date.  The Court then told the parties that it had a concern that the government made an inaccurate statement of law regarding the legal elements of 18 U.S.C.

---

[1] To keep the trial running on schedule, the Court allowed Petitioner to make the motion at the close of the government's evidence but heard the argument on the motion during Petitioner's testimony.

[2] The Court primarily outlined the lack of evidence supporting Count Two.

§ 1001 during the government's rebuttal. Specifically, the Court noted its concern with the statement in closing argument about minimizing involvement and asked whether that was a violation of § 1001. The Court stated that it did not know if it was "a completely erroneous statement of law" or "to the extent to which that might have affected the verdict," but the Court wanted the parties to file post-trial briefs addressing the issue.

On June 29, 2018, fifty-nine days after the verdict (and after the Court expressed its desire for post-trial briefing on the government's potential erroneous statement of law), Petitioner's counsel filed a Renewed Motion for Judgment as a Matter of Law. In this motion, Petitioner stated that he moved the Court "pursuant to Rule 50 of the Federal Rules of Criminal Procedure." In the memorandum, he stated that the government did not prove beyond a reasonable doubt the five elements of § 1001(a)(2). Petitioner also stated that the government's statements in its closing argument were misstatements of law, intentionally misled the jury, and affected the jury verdict. Finally, in the "Relief Requested" portion of his memorandum, Petitioner invoked Fed. R. Crim. P. 50(b) and Rule 59.

On July 30, 2018, the Court denied Petitioner's Renewed Motion for Judgment as a Matter of Law. The Court noted Petitioner's erroneous citation to Federal Rules of Criminal Procedure 50 and 59 and that neither of these rules governed Petitioner's requested relief.[3] Instead, the Court pointed out that Rules 29 and 33 of the Federal Rules of Criminal Procedure would govern Petitioner's request. In addition, the Court noted that motions filed under Rules 29 and 33 must

---

[3] Federal Rules of *Criminal* Procedure 50 and 59 do not govern new trials. First, there is no subsection (b) in Fed. R. Crim. P. 50, and Rule 50 governs scheduling. Next, Fed. R. Crim. P. 59 addresses matters before a magistrate judge. Thus, these rules are inapplicable to a new criminal trial. Federal Rules of *Civil* Procedure 50 and 59 *do* address new trials.

be filed within 14 days after a guilty verdict.[4] The Court found that Petitioner did not timely file his motion or ask the Court for an extension of time to do so. Despite the Court's serious concerns with whether the government misstated the law during closing argument, the Court found that it must deny Petitioner's untimely motion.

On August 15, 2018, Petitioner then filed a Motion for Reconsideration. In this motion, Petitioner stated that the Court did not give the parties the timeframe to file post-trial briefs and that neither side could file an argument without having possession of the trial transcripts. He asserted that he did not receive a copy of the trial transcript until three days after the deadline for filing any motions for new trial. Petitioner also asserted that there was no question that he should have filed a motion for extension of time to file post-trial briefs but requested that the Court find excusable neglect for failing to do so.

The Court denied Petitioner's motion. The Court first found that Petitioner's assertions regarding the trial transcript misrepresented the facts. The Court then found that even if the Court entertained Petitioner's argument, Petitioner did not provide any explanation as to why he needed 42 days after receiving the trial transcripts to file his Renewed Motion. In addition, the Court determined that Petitioner did not make a showing of excusable neglect for failure to timely file post-trial briefing. The Court noted Petitioner's counsel's lack of awareness and "inexcusable failure to comply with the Federal Rules of Criminal Procedure." Ultimately, the Court found that relief was not warranted under Petitioner's Motion for Reconsideration but noted that Petitioner

---

[4] Even under Federal Rules of Civil Procedure 50 and 59, a party is required to file its motion within 28 days.

was not entirely without recourse should he file a habeas petition for ineffective assistance of counsel.

Two weeks after this Order, Petitioner's trial counsel withdrew from the case, and new counsel entered her appearance on behalf of Petitioner. On January 30, 2019, Petitioner was sentenced to one year of probation. Petitioner filed an appeal with the Tenth Circuit and then dismissed the appeal several months later. Petitioner has now filed this Motion to Vacate pursuant to 28 U.S.C. § 2255.

In this motion, Petitioner sets forth four arguments based on ineffective assistance of trial counsel. First, Petitioner claims that he received ineffective assistance because his counsel missed the post-trial motions deadline. Next, he states that his counsel was ineffective because he failed to object to the government's misstatement of law during its closing argument. Third, Petitioner asserts that his attorney was ineffective because he failed to object to irrelevant and prejudicial evidence at trial. Finally, Petitioner claims that he received ineffective assistance of counsel because his counsel failed to move for a mistrial after the Court granted a judgment of acquittal on one of the two charges. Petitioner requests that his conviction and sentence be vacated.

The Court held an evidentiary hearing on Petitioner's motion on September 24, 2019. Petitioner's trial counsel testified. He stated that he was licensed in New Mexico but not in Kansas. He was admitted to the federal bar of Kansas in April 2007, but he did not have to take the Kansas bar examination or perform any other testing to be admitted to the Kansas federal bar.[5] Petitioner's

---

[5] Counsel filed a motion to be admitted to the federal bar in Kansas and was sworn in, despite not having a Kansas bar license. This procedure is no longer allowed, and as of June 2019, counsel is no longer a member of the Kansas federal bar.

trial counsel stated that Petitioner's trial was his first federal trial. Counsel's only previous jury trial was in New Mexico state court involving medical debt collection.

When Petitioner's counsel was asked if he knew what Rule 404 of the Federal Rules of Evidence said, he stated that he did not know. In addition, counsel testified that he did not know what a Rule 404(b) notice was. He also admitted that he did not know Federal Rule of Evidence 403 without looking at it. Petitioner's trial counsel stated that he had concerns about his ability to represent Petitioner and recommended to Petitioner approximately three or four other defense attorneys. Nevertheless, counsel proceeded on as Petitioner's trial attorney.

At the close of counsel's testimony, both sides presented their arguments for and against Petitioner's § 2255 motion. As discussed below, based on a review of the record, the Court finds Petitioner's assertions of ineffective assistance of counsel to have merit.

## II. Legal Standard

Under 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> [t]he judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[6] The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[7]

### III.     Analysis

Petitioner brings four separate claims of ineffective assistance of counsel. In general, to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*.[8] Under *Strickland*, a petitioner must prove that: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.[9] To prevail on the first prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[10] With regard to the second prong, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[11] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[12] This

---

[6] 28 U.S.C. § 2255(b).

[7] *See Hatch v. Okla.*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[8] 466 U.S. 668 (1984).

[9] *Id*. at 687-89.

[10] *Id*. at 690.

[11] *Id.* at 694.

[12] *Id*.

requires the court to focus on "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[13]

## A. First Claim

Petitioner's first claim is that his trial counsel was ineffective because he missed the post-trial motions deadline. He claims that he meets the first *Strickland* prong as it was objectively unreasonable to miss a commonly known deadline. The government concedes that counsel was deficient in failing to timely file a post-trial motion.

Petitioner's post-trial motion was approximately 45 days overdue, did not include any reason for the untimely filing, and cited to erroneous legal standards governing the motion.[14] The Court agrees that the failure to timely file a post-trial motion, particularly when the Court informed the parties of the concern it had with the government's closing statements and directed the parties to address the issue in post-trial briefing, falls outside the realm of professionally competent assistance. Thus, Petitioner meets the first element under *Strickland* that his counsel's performance was deficient.

In addition, Petitioner contends that he was prejudiced by his counsel's failure to file a post-trial motion because there was a reasonable probability that the Court would have granted either a motion for judgment of acquittal or a motion for a new trial. Specifically, Petitioner asserts that the evidence does not support beyond a reasonable doubt that Petitioner made a materially, false statement and that would entitle him to a judgment of acquittal. In addition, Petitioner argues

---

[13] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).

[14] As noted above, counsel did not cite to the appropriate criminal rules of procedure. In addition, Petitioner's counsel's arguments regarding the sufficiency of the evidence were cursory. The entirety of Petitioner's argument regarding the sufficiency of the evidence was five sentences, and only one sentence contained any argument, but it was devoid of relation to any of the evidence (or lack of evidence) in the case.

that there was a reasonable probability that the Court would have granted a motion for new trial because the verdict was against the weight of the evidence, the verdict was tainted by the government's misstatement of law during closing, and the jury instructions (or lack of a curative one) amplified the government's misstatement of law.

Petitioner's contentions have merit. The elements of 18 U.S.C. § 1001(a)(2) include: "(1) the defendant made a statement; (2) the statement was false, fictitious, or fraudulent as the defendant knew; (3) the statement was made knowingly and willfully; (4) the statement was within the jurisdiction of the federal agency; and (5) the statement was material."[15] The jury instruction given in this case reflected these elements. It provided:

> The Defendant is charged in Count One with a violation of 18 U.S.C. section 1001(a)(2). This law makes it a crime to knowingly and willfully make a false, fictitious, or fraudulent statement or representation concerning a material fact within the jurisdiction of the executive branch of the United States.
>
> To find the Defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: the Defendant made a false, fictitious, or fraudulent statement or representation to the government; specifically by falsely representing to the Federal Bureau of Investigation that he did not play in a private poker game organized by an illegal gambling business, which occurred on or about February 12, 2014, in or around Wichita, KS;
>
> *Second*: the Defendant made the statement knowing it was false;
>
> *Third*: the Defendant made the statement willfully, that is deliberately, voluntarily, and intentionally;
>
> *Fourth*: the statement was made in a matter within the jurisdiction of the executive branch of the United States; and
>
> *Fifth*; the statement was material to the Federal Bureau of Investigation.

---

[15] *United States v. Williams*, 934 F.3d 1122, 1128 (10th Cir. 2019) (quotation marks and citation omitted)).

A fact is "material" if it has a natural tendency to influence or is capable of influencing a decision of the Federal Bureau of Investigation.

It is not necessary that the Federal Bureau of Investigation was in fact influenced in any way.[16]

In this case, had Petitioner's counsel made a timely and competent argument that the government's evidence was insufficient to support a finding of guilty, and thus Petitioner should be granted a judgment of acquittal or new trial, Petitioner likely would have been successful. As noted above, the evidence that Petitioner made the false statement that he did not play in a private poker game organized by an illegal gambling business on February 12, 2014, was scarce.[17] The FBI agent, WPD detective, and Petitioner testified that they did not speak about specific dates when the agent and detective spoke with Petitioner. The evidence showed that the agent and detective did not ask Petitioner if he played in a poker game on February 12. There was no evidence that the agent and detective spoke with Petitioner about whether the game was a private game or whether it was organized by an illegal gambling business. Thus, there was no testimony by any individual that Petitioner denied playing in a private poker game, organized by an illegal gambling business, on February 12.

Furthermore, as Petitioner points out, even if there was evidence that Petitioner made the statement, there is no evidence that the statement was material to the FBI's investigation. For a statement to be "material," it must have the "natural tendency to influence, or [be] capable of

---

[16] Jury Instructions, Instr. No. 8, Doc. 33, p. 9.

[17] Although the video may show that Petitioner played poker on that date, Petitioner was not on trial for playing poker, but rather he was charged with making a false statement that he did not play in a private poker game, organized by an illegal gambling business, on that date.

influencing, the decision of the decisionmaking body to which it was addressed."[18]  In this case, the decisionmaking body was the FBI.[19]  "In determining whether the government presented sufficient evidence to support a jury's finding of materiality under § 1001, we ask three questions: (1) What statement was made? (2) What decision was the decision maker considering? (3) Was the statement capable of influencing the relevant decision?"[20]  Here, there was no evidence of what decision the FBI was considering.  Furthermore, there was no evidence that Petitioner's statement (that he had not attended a private poker game organized by an illegal gambling business on February 12) had the ability or capability of influencing the FBI's decision.  Accordingly, there was insufficient evidence to convict Petitioner beyond a reasonable doubt on at least two elements of § 1001(a)(2).

The failure of Petitioner's counsel to timely file a post-trial motion seeking acquittal or a new trial is compounded by the fact that Petitioner's counsel did not make a motion at the close of all the evidence at trial for a judgment of acquittal.[21]  At that point, Petitioner's counsel may have been successful.  Counsel made a Rule 29 motion at the close of the government's evidence, but even then, his argument lacked substance and fell below an objective standard of reasonableness as he failed to discuss the evidence (as presented up to that point) and how it related to the elements of the crimes charged.  The Court mentions this fact because Petitioner's counsel's failure to understand Rule 29 standards (both during and after trial), failure to make competent arguments,

---

[18] *United States v. Schulte*, 741 F.3d 1141, 1154 (10th Cir. 2014) (internal quotation marks and citation omitted).

[19] See Jury Instruction, Instr. No. 8, Doc. 33, p. 9.

[20] *Williams*, 934 F.3d at 1128 (quotation marks and citation omitted).

[21] Counsel is not required to make a Rule 29 motion at the close of all the evidence, but in this case, it appears that it would have been prudent to do so.

and failure to discuss the lack of evidence against Petitioner cumulatively led to prejudice against Petitioner. But for Petitioner's trial counsel's errors, there is a reasonable probability that Petitioner's Rule 29 motion would have been granted and the result would have been different.

Furthermore, beyond the issues with the sufficiency of the evidence, the Court concludes that the government made a misstatement of law in its rebuttal closing argument. As Petitioner argues, prosecutorial misconduct, including misstatements of law in a closing argument, can render a trial unfair.[22] "The misconduct analysis proceeds in two steps: (1) we decide whether the prosecutor's comments were improper, and (2) if they were, we examine the likely effect of the comments on the jury's verdict."[23]

18 U.S.C. § 1001(a)(2) makes it a crime to "make[] any materially false, fictitious, or fraudulent statement or representation."[24] It prohibits the act of falsely speaking. In contrast, 18 U.S.C. § 1001(a)(1) makes it a crime to "falsif[y], conceal[], or cover[] up by any trick, scheme, or device a material fact." This section prohibits the act of failing to speak. As noted by the Tenth Circuit, "[s]ection 1001 of Title 18 encompasses two distinct offenses-concealment of a material fact (18 U.S.C. § 1001(a)(1)) and the making of a false statement (18 U.S.C. § 1001(a)(2))."[25] The making of a false statement is central to a conviction under § 1001(a)(2).[26]

During the government's rebuttal, it made the statement that Petitioner minimized his involvement in the hopes of not being asked follow-up questions. In addition, the government

---

[22] *See United States v. Currie*, 911 F.3d 1047, 1055 (10th Cir. 2018).

[23] *Id.*

[24] 18 U.S.C. § 1001(a)(2).

[25] *United States v. Shaw*, 150 F. App'x 863, 877 (10th Cir. 2005) (citing 18 U.S.C. § 1001).

[26] *Williams*, 934 F.3d at 1128.

noted that Petitioner answered questions in a way to only answer what was specifically asked in an effort to misdirect. Finally, the prosecutor stated that what occurred in the case was "classic minimization" and "that's why we're here today."

The government made a misstatement of law. Petitioner was charged and tried for falsely making the statement that he did not play in a private poker game that occurred on February 12, 2014. To be convicted of this crime, the government had to prove beyond a reasonable doubt that Petitioner made this false statement. It was improper for the government to state that it simply had to demonstrate that Petitioner minimized his involvement, misdirected, or failed to answer the question. Instead, the government had to prove that Petitioner made a false statement. Thus, the Court concludes that it was plainly improper for the government to make the statement that minimization demonstrated Petitioner's guilt.

When assessing whether the comment rendered the trial unfair, the court considers "the trial as a whole, including the curative acts of the district court, the extent of the misconduct, and the role of the misconduct within the case."[27] In looking at the trial as a whole, as noted above, the sufficiency of the evidence in this case to prove beyond a reasonable doubt that Petitioner made a false statement under § 1001(a)(2) was already lacking.

The next consideration when assessing the affect the improper statement had on the jury is the jury instructions. In this case, Petitioner's counsel did not object to the government's statement when it was made so there was no possibility that a curative instruction could be given to the jury.

---

[27] *Currie,* 911 F.3d at 1056 (quotation marks and citation omitted).

"A court's refusal to correct a prosecutor's misstatement of law may affect the prejudicial effect of the comment."[28]

In addition, with regard to the jury instructions given to the jury, there is some potential that the instructions could have confused the jurors. Instruction 8 set forth Count One accurately and explained the law and elements necessary to find Petitioner guilty. This instruction also set forth that Petitioner was specifically charged with "falsely representing to the Federal Bureau of Investigation that he did not play in a private poker game organized by an illegal gambling business, which occurred on or about February 12, 2014, in or around Wichita, KS."[29] Instruction 2, however, set forth that Count One of the Indictment charged Petitioner with falsely representing "that he *did not attend*, and did not play, in a private poker game organized by an illegal gambling business in Wichita, KS."[30] Because these instructions were conflicting, and directly relate to the content of the false statement Petitioner was accused of, the instructions were unclear on the charge. Thus, this factor weighs in Petitioner's favor.

The last factor the Court considers is the role of the government misconduct throughout the case. "[A] misstatement of law has less prejudicial effect when the prosecutor correctly states the law at other points in closing argument."[31] Here, the government correctly stated the law at the beginning and several times during its closing. However, even during the initial closing argument, the government stated that failing to tell the FBI what Petitioner knew about illegal

---

[28] *Id.* Here, the Court did not refuse to give a curative instruction. Instead, it was never asked to give one.

[29] Jury Instructions, Instr. 8.

[30] Jury Instructions, Instr. 2, Doc. 33, p. 3. The government no longer proceeded on that theory at trial because the parties agreed that Petitioner admitted that he attended.

[31] *Currie*, 911 F.3d at 1056 (quotation marks and citation omitted).

private poker games demonstrated that Petitioner committed the crime for which he was charged. Thus, the jury heard multiple times that it could convict Petitioner on his failure to speak. Given that the jury heard a misstatement of law, there was no curative jury instruction, and the jury instructions included a conflicting instruction regarding the false statements for which Petitioner was charged, the Court concludes that the misstatement of law likely affected the jury's verdict. Had Petitioner's counsel timely filed a post-trial Rule 29 motion on this issue, he likely would have been successful. Thus, Petitioner demonstrates objectively unreasonable performance that led to an unfair trial.

Finally, the Court notes several other considerations that, in the cumulative, demonstrate constitutionally deficient performance that prejudiced Petitioner. Counsel's lack of experience was evident. Petitioner's counsel had never tried a case in federal court, and although that is likely the case for numerous attorneys, counsel's performance is expected to be objectively reasonable.

First, counsel is expected to know the relevant evidence rules. Counsel did not. Counsel did not know what Rule 404(b) evidence was. Pursuant to Fed. R. Evid. 404(b), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Here, the government repeatedly introduced evidence that Petitioner participated in poker games at different locations and different times (particularly the game at O'Brien's) than the game he was charged with making a false statement about. Not only was it irrelevant to the date and statement at issue, it was prejudicial. Indeed, Petitioner's counsel introduced into evidence that Petitioner knew that playing poker was a crime and that Petitioner would plead guilty to a misdemeanor. Counsel's injection of this fact was an unreasonable trial strategy and prejudicial to Petitioner. In addition, counsel's

failure to object to irrelevant and prejudicial evidence numerous times throughout the trial was objectively unreasonable.[32]

With regard to counsel's closing argument, it was less than three minutes long, devoid of substance, and objectively unreasonable. Counsel did not direct the jury to each element the government had to prove. Counsel did not instruct the jury that the government had to prove its case beyond a reasonable doubt. Counsel did not direct the jury to the lack of evidence to support each element of the crime charged. A competent attorney would have pointed out the lack of evidence and would have directed the jury to the relevant law. Trial counsel's extremely short closing occurred right before the government's closing in which the government misstated the law and informed the jury that the failure to speak was enough to convict Petitioner. At that point, Petitioner failed to object.

Petitioner's counsel's deficient performance prejudicing Petitioner's right to a fair trial continued after trial. Only after the Court directed the parties' attention to the potential misstatement of law and asked for briefing on the issue did counsel appear to become aware of an issue. And as noted above, Petitioner remarkably failed to file a timely brief. When counsel did file a motion, he failed to invoke the proper rules of criminal procedure and failed to give any excusable justification for the untimeliness of the brief. Furthermore, his brief lacked any meaningful arguments regarding the sufficiency of the evidence.

The Court concludes that, based on all factors, had Petitioner's counsel filed a timely post-trial motion, he likely would have been successful in either obtaining a judgment of acquittal or a

---

[32] The Court noted during the Rule 29 motion that it would not allow additional questions that did not directly relate to the charges in this case and that it had tolerated it so far because Petitioner's counsel failed to object.

new trial. Ultimately, Petitioner's counsel's failure was objectively unreasonable, and this failure prejudiced Petitioner rendering the trial fundamentally unfair. Accordingly, Petitioner demonstrates that he received ineffective assistance of counsel and is entitled to have his conviction set aside.

**B.     Second Claim**

Petitioner's second claim is that counsel was ineffective because he failed to object to the government's misstatement of law during its closing argument. He states that it was objectively unreasonable because the misstatement was obvious and apparent. Petitioner further contends that it was prejudicial to him because had counsel objected, the Court would have issued a curative instruction setting forth the correct legal standard. Had the Court issued that statement, Petitioner contends that the jury likely would have returned a different verdict.

As noted above, the Court has found that the government misstated the law during closing. In addition, the Court found Petitioner's counsel's failure to object was objectively unreasonable and prejudicial. It is unnecessary to go through this analysis again. Suffice to say, Petitioner's second claim for ineffective assistance of counsel is meritorious as well.

**C.     Third Claim**

In Petitioner's third claim, he asserts that he received ineffective assistance of counsel because his attorney failed to object to irrelevant and prejudicial evidence at trial. Petitioner specifically contends that his counsel's performance was objectively unreasonable because the government entered prior-crimes evidences without notice or justification required by Rule 404(b). Furthermore, Petitioner states that it was prejudicial because the jury would have returned a different verdict had the evidence been excluded.

Again, the Court noted Petitioner's trial counsel's failures above regarding his performance at trial and his failure to object to irrelevant and prejudicial evidence at trial. The Court finds counsel's performance objectively unreasonable. Due to the cumulative nature of Petitioner's counsel's other errors, the Court finds that Petitioner's third claim of ineffective assistance has merit as well.

**D.      Fourth Claim**

Finally, Petitioner contends that his counsel was ineffective in failing to ask for a mistrial after the Court granted a judgment on the acquittal on one of the counts. The Court recognizes that there was some overlap in the evidence relating to both charges against Petitioner, but it cannot conclude that this argument has merit. Furthermore, it is unnecessary to address this contention as Petitioner demonstrates ineffective assistance of counsel as to his other claims.

In sum, the Court finds that Petitioner demonstrates an ineffective assistance of counsel claim. Petitioner's trial counsel's performance was objectively unreasonable, and it deprived Petitioner of a fair trial. Accordingly, the Court grants Petitioner's Motion to Vacate.

**IT IS THEREFORE ORDERED** that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 76) is **GRANTED**. Petitioner's judgment of conviction and sentence is vacated and set aside.

**IT IS SO ORDERED**.

Dated this 22nd day of October, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE